IN THE OREGON TAX COURT
MAGISTRATE DIVISION
PropertyTax

SUSAN STRAUSS and JEFF STRAUSS, )
 )
   Plaintiffs, ) TC-MD 130217N
 )
  v. )
 )
WALLOWA COUNTY ASSESSOR, )
 )
   Defendant. ) **FINAL DECISION**

The court entered its Decision in the above-entitled matter on November 14, 2013. The court did not receive a request for an award of costs and disbursements (TCR-MD 19) within 14 days after its Decision was entered. The court's Final Decision incorporates its Decision without change.

Plaintiffs filed their Complaint on April 15, 2013, challenging the assessment of property identified as Account 4494 (the subject property) for the 2012-13 tax year. A telephone trial was held in this matter on August 8, 2013. Susan Strauss (Strauss) appeared and testified on behalf of Plaintiffs. Gabrielle Fregulia (Fregulia), Wallowa County Assessor, appeared and testified on behalf of Defendant. Plaintiffs' Exhibits 1 through 4 were received without objection. Defendant did not submit any exhibits.

I. STATEMENT OF FACTS

The subject property includes a 2,121-square foot home on a 21,597-square foot lot near Wallowa Lake. (Ptfs' Ex 3.) Plaintiffs could not determine the year that the subject property was built, but "believe it was one of the first homes built" at Wallowa Lake. (Ptfs' Compl at 3.) They stated that "pictures from the early 1900s show" a portion of the house that now makes up the living room. (*Id.*) Since that time, "three bedrooms and two bathrooms" have been added,

and a garage was added in 2009. (*Id*.) Fregulia testified that the subject property is a "well maintained Class C property," with hard wood floors, and a "river stone" fireplace. She testified that "the subject property has over a hundred feet of riverfront." (*See also* Ptfs' Ex 1 ("about 116 feet of Wallowa River frontage").)

Plaintiffs purchased the subject property on April 6, 2012, for $245,000. (Ptfs' Compl at 3.) Plaintiffs state they "didn't know the seller, so she wasn't giving us preferential treatment." (*Id.* at 5.) Plaintiffs stated there was "at least one other offer" to purchase the subject property, and "the house had been on the market for over a year, so there had been plenty of time for exposure on the open market." (*Id*.) Plaintiffs spent $5,000 on repairs to the subject property following their purchase. (*Id*.) Fregulia testified that Plaintiffs purchased the subject property in a "duress" sale. She testified that its previous owner had acquired the subject property in 2007 through a divorce settlement. Fregulia testified the subject property was listed in 2010 for $345,000, then reduced to $300,000 on an unspecified date, and finally sold to Plaintiffs in April 2012 for $245,000. Strauss testified that she specifically asked the real estate agent if the owner was selling out of "distress," to which the agent answered "no." Strauss testified that the seller received nearly $9,000 from the sale of the subject property after paying the subject property's mortgage. (*See* Ptfs' Compl at 5 (Settlement Statement).)

Fregulia testified that only eleven properties had sold "on the lake," since 2009, and that the real estate market had "all but dried up." She testified that she found only one comparable sale, a 2,100-square foot house that sold in June 2012 for $330,000. Fregulia testified that that property is located on "a little over" 5,000 square feet of land close to the river, but not on it.

Strauss identified three comparable sales from 2012 and 2013 in support of Plaintiffs' requested real market value. (Ptfs' Ex 3.) Strauss' "Comparable #1" was a 1,003-square foot

single story, two bedroom, two bathroom, riverfront house on approximately 14,500 square feet of land that sold on October 25, 2012, for $125,000. (*Id.*) Fregulia testified that property was purchased primarily for the land, but had not been demolished since the purchase.

Strauss' "Comparable #2" was a foreclosure sale on July 6, 2012, for $202,000. (Ptfs' Ex 3.) It is a 2,376-square foot two story house with five bedrooms, four bathrooms, two living rooms, and two kitchens on 13,887 square feet of land. (*Id.*) Strauss testified that the house has a mountain view, but is not riverfront. Strauss' "Comparable #3" was a foreclosure sale on March 29, 2013, for $244,900. (Ptf's Ex 3.) It is a "relatively new * * * nicer Class 5 home." (Ptfs' Compl at 5.) Strauss noted the home is "slightly smaller" than subject property, but "no repairs were required." (*Id.*) It is a 2,016-square foot two story house with three bedrooms, three bathrooms, "[w]ood and cork floors, sauna, granite countertops, tile and granite kitchen, [and a] sound system." (Ptfs' Ex 3; *see also* Ptfs' Compl at 5.) The land is 9,583 square feet. (Ptfs' Ex 3.)

Fregulia testified that Strauss' "Comparables #2 and #3" are both in a "totally different location" than the subject property and were both foreclosures. She testified that Strauss' Comparable #2 is not of similar quality to the subject property.

Fregulia acknowledged at trial that the subject property's 2012-13 real market value was overstated. She testified that the subject property's 2012-13 real market value should be reduced from $523,910 to $440,505 based on a reduction in the land real market value. Strauss testified that the dimensions of the subject property's basement were incorrect in Defendant's records. Fregulia testified she agreed and that Defendant would reduce the subject property's 2012-13 real market value based on the square footage error.

/ / /

The subject property's 2012-13 real market value was $523,910 and its maximum assessed value was $267,332. (Ptfs' Compl at 2.) Strauss observed that "[b]oth the market value and the assessed values are greater than what we paid for the property." (Ptfs' Compl at 5.) Plaintiffs request the subject property's 2012-13 real market value be reduced to $245,000 based on Plaintiffs' purchase price. Fregulia testified that the subject property's 2012-13 real market value is overstated and should be reduced to $440,505. However, she testified that a reduction to $440,505 would not result in any tax savings to Plaintiffs because the 2012-13 maximum assessed value was $267,332.

## II. ANALYSIS

The issue before the court is the real market value of the subject property for the 2012-13 tax year. "Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County* Assessor, TC-MD No 020869D, WL 21263620 at *2 (Mar 26, 2003) (citations omitted). Real market value is defined in ORS 308.205(1), which states:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's length transaction occurring as of the assessment date for the tax year."[1]

The assessment date for the 2012-13 tax year was January 1, 2012. ORS 308.007; ORS 308.210.

The real market value of property "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue[.]" ORS 308.205(2). The three approaches of value that must be considered are: (1) the cost approach; (2) the sales comparison approach; and (3) the income approach. OAR 150-308.205-(A)(2)(a). Although all three approaches must be considered, all three approaches may not be applicable in a given case. *Id.*

---

[1] All references to the Oregon Revised Statutes (ORS) are to 2011.

Plaintiffs have the burden of proof and must establish their case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[T]here is no presumption that a tax assessment is valid." *Huang v. Dep't of Revenue*, TC 4880, 2009 WL 2217751 at *2 (July 27, 2009). However, "it is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Poddar v. Dept. of Revenue*, 18 OTR 324, 332 (2005) (citing *Woods v. Dept. of Rev.,* 16 OTR 56, 59 (2002)). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990). "[T]he court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

"A recent sale of the property in question is important in determining its market value. If the sale is a recent, voluntary, arm's length transaction between a buyer and seller, both of whom are knowledgeable and willing, then the sales price, while certainly not conclusive, is very persuasive of the market value." *Kem v. Dep't of Revenue*, 267 Or 111, 114, 514 P2d 1335, 1337 (1973). "Whether a transaction is so recent as to be persuasive of present value will depend upon the similarity of conditions affecting value at the time of the transaction and conditions affecting value at the time of the assessment." *Sabin v. Dep't of Revenue* (*Sabin*), 270 Or 422, 426-27, 528 P2d 69, 71 (1974).

Plaintiffs purchased the subject property four months after the January 1, 2012, assessment date. Fregulia testified that, between 2009 and 2012, the real estate market had "all but dried up" and there were only eleven sales in the Wallowa Lake area. The comparable sales

provided by the parties do not indicate changing market conditions between January 2012 and April 2012. The court finds that market conditions as of April 2012 were similar to those as of January 1, 2012, and Plaintiffs' purchase of the subject property in April 2012 was "recent." The court next considers whether Plaintiffs' purchase was a voluntary, arm's-length transaction.

Plaintiffs purchased the subject property in April 2012 from an unrelated seller. Fregulia testified that the sale was made under duress because the seller had acquired the subject property through a divorce settlement in 2007 and listed the subject property for sale in 2010. "When nontypical market conditions of sale are involved in a transaction (duress, death, foreclosures, interrelated corporations or persons, etc.) the transaction will not be used in the sales comparison approach unless market-based adjustments can be made for the nontypical market condition." OAR 150-308.205-(A)(2)(c). The term "duress" is not defined in the administrative rule.

This court has found that, for the purpose of property valuation, "economic hardship sufficient to force the owner to unload the property at a public auction[]" constituted duress. *Monserud v. Clatsop County Assessor*, TC-MD 100577C, 2011 WL 2222187 at *3 (June 6, 2011). Fregulia provided no evidence economic hardship that caused the seller to list the subject property in 2010. The passage of time between the seller's divorce settlement in 2007 and the seller's listing in 2010 suggests that the seller was not acting under "duress" related to the divorce settlement. There is no other evidence of "duress" that influenced the sale of the subject property in April 2012.

Plaintiffs have carried their burden of proof and established that their purchase of the subject property in April 2012 was a recent, voluntary, arm's length transaction. Defendant determined that the 2012-13 real market value of the subject property was $440,505, but

provided no evidence in support of that value or in support of the 2012-13 tax roll value of $523,910. The court finds that the subject property's 2012-13 real market value was $245,000.

### III. CONCLUSION

After careful review of the testimony and evidence presented, the court finds that the subject property's real market value as of January 1, 2012, was $245,000, based on Plaintiffs' April 6, 2012, purchase price. Now, therefore,

IT IS THE DECISION OF THIS COURT that the real market value of property identified as Account 4494 was $245,000 for the 2012-13 tax year.

Dated this ____ day of December 2013.

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Final Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.*

*This document was signed by Magistrate Allison R. Boomer on December 3, 2013. The court filed and entered this document on December 3, 2013.*